UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division

Case Number: _____

KARYN BISHOF,

    Plaintiff,

vs.

City of Palm Beach Gardens, a Florida Municipality,

    Defendants.
_____/

**Complaint for Damages and Injunctive Relief — Jury Trial Demanded**

Plaintiff, Karyn Bishof, sues defendant, Palm Beach Gardens, a Florida municipality, and shows:

### Introduction

1. This is an action brought by a former City of Palm Beach Gardens Fire Rescue trainee—one of only a dozen or so women in a department with 130 uniformed personnel (and a history of problematic relationships with its female firefighters), the only female in her six-person training class and a single mother.

2. During her training, plaintiff, along with every other member of her training class, experienced symptoms of COVID-19 after exposure to an

instructor who had been at a conference where number of attendees were diagnosed with COVID. Plaintiff (but none of her classmates) voluntarily tested and provided her positive test results to the City.

3.   Meanwhile, in March and April 2020, some COVID-19 sufferers began discussing with each other and the media lingering symptoms and members of the medical profession began observing, studying and publishing about what has come to be known as "long hauler COVID."

4.   Following a brief suspension of the training class while its members recovered, training resumed. Then, on April 20, 2020, despite having top test scores and being told she had passed all sections of her training, and despite never having had any disciplinary actions or even warnings, plaintiff was fired, allegedly "for failure to meet probationary standards."

5.   Plaintiff sues for violations of the Americans with Disabilities Act, 42 U.S.C. § 12112 et. seq., as amended by the Americans with Disabilities Amendments Act of 2008 (collectively "ADAAA"), based on her disability and/or perceived disability, for discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and for violations of the Florida Civil Rights Act ("FCRA"), Chapter 760.01, et seq., Florida Statutes, based on her sex, marital status, and handicap or perceived handicap. She seeks all legal and equitable relief

available under all three statutes, as well as her costs, including reasonable attorneys' fees.

### Jurisdiction, Parties and Venue

6. This court has jurisdiction pursuant 28 U.S.C. §§ 1331 (federal question) and has supplemental jurisdiction under 28 U.S.C. § 1367 of the state law claims because they are so related to plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the claims arose here and the defendant is subject to the court's jurisdiction here.

8. At all material times, plaintiff, Karyn Bishof, was protected by:

   a. the ADAAA because:

   i. she was an "employee" as defined in 42 U.S.C. § 12111(4);

   ii. she was a "qualified individual," as envisioned by 42 U.S.C. §§ 12111(8) and 12112(b)(4), or

   iii. she was perceived as having an impairment, as envisioned by 42 U.S.C. §§ 12102(1)(C) and (3)(A);

   b. Title VII because she was an "employee" as defined in 42 U.S.C. 2000e, Sec. 701(f) and by Sec. 703 because she is female; and

  c. section 760.10(1(a) of the FCRA because she is female, a single mother and either had a handicap or was perceived as having a handicap.

9. At all times material, defendant, the City of Palm Beach Gardens was:

  a. a municipality in Palm Beach county, Florida;

  b. an "employer" as envisioned by the ADAAA, Title VII and the FCRA.

### Satisfaction of Conditions Precedent

10. Plaintiff, Karyn Bishof, on February 11, 2021 filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and "disability/perceived disability" and on April 19, 2021 filed an amended charge of discrimination adding "marital status" to the bases on which the City discriminated against her.

11. Plaintiff's filing of the charge and amended charge with the EEOC within the time allowed for filing under the FCRA and satisfied the filing requirements of the FCRA under section 760.11(1), Florida Statutes.

12. The Florida Commission on Human Relations ("FCHR") made no finding adverse to Ms. Bishof within 180 days of her filling the charge, entitling her to sue the City.

13. The EEOC issued a dismissal and notice of rights dated April 18, 2022, within 90 days of the receipt of which plaintiff has filed this action.

14. All other conditions precedent to this action have been satisfied, have been waived or would be futile.

## General Allegations

15. Plaintiff, is a now 32-year old single mother who received her certification as a Firefighter from the State Fire Marshal on February 8, 2018, as an Emergency Medical Technician on August 30, 2018 and as a paramedic on April 20, 2019.

16. Upon completing her training and obtaining her certifications, Ms. Bishof applied, <u>inter alia</u>, for a position as a full time firefighter/paramedic with the City of Palm Beach Gardens in its Fire Rescue Department.

17. During Ms. Bishof's pre-employment interview with Mauricio Gonzalez from HR, she talked about how she wished she could work in the emergency room, but all new hires were assigned the night shift and after she paid a sitter, the job wouldn't be worth taking financially.

18. Later, Mr. Gonzalez called Ms. Bishof and told her there was something in her interview that concerned him and wanted to make sure plaintiff knew the position for which she applied was a 24 hour shift position and she would have to work overnights and inquired if she would be able to do the job. Ms. Bishof, although taken aback by the comment inquiring, in effect, if she was capable of working as a firefighter/paramedic in light of her

childcare responsibilities and status as an unmarried woman, Ms. Bishof assured Mr. Gonzalez she could do the job.

19. The City offered plaintiff the firefighter/paramedic position on January 23, 2020 with a start date of February 10, 2020, which plaintiff accepted the day it was made.

20. Plaintiff's employment with the City was subject to a one year probationary period.

21. Plaintiff took the Public Employees Oath required under § 876.05, Fla. Stat. on February 10, 2020 and commenced training to become a firefighter/paramedic.

22. Plaintiff's training class was comprised of five male trainees and plaintiff, which reflected the make-up of the fire department as a whole: it had approximately 130 uniformed personnel with only about a dozen women.

23. Further, as plaintiff later learned, the City had a history of problematic relationships with its female firefighters, including claims of unfair treatment, undeserved terminations and hostile work environment.

24. Fire training ran from February 10, 2020 to March 6, 2020, which plaintiff completed successfully. EMS training began on Monday, March 9, 2020.

25. The Florida Department of Health announced two presumptively positive cases of COVID—the first in this state on March 1, 2020, and on

March 11, 2030, Govenor DeSantis issued an executive order declaring a state of emergency for COVID-19.

26. During the first week of EMS training, on March 10 or March 11, the instructor, Penny Eggers, received numerous phone calls and texts from people with whom she had attended a conference in Tampa during the week of March 2, 2020 because a number of attendees had tested positive for Covid-19.

27. By March 12 or 13, 2020, Instructor Eggers was observably sick with a runny and stuffy nose and coughing. She kept clearing her throat and rubbing her eyes. Although she had been at the conference where Covid-19 cases were identified, she blamed her symptoms on her allergies.

28. Palm Beach County Schools closed March 13, 2019 because of COVID-19, prompting questions from Ms. Bishof's classmates, EMS instructor, the training class's morning fitness instructor, one of the Chiefs at a softball tournament and others regarding how plaintiff would cope with a child at home.

29. While plaintiff's childcare responsibilities may have been a concern for others in the department, it was not for Ms. Bishof, who already had made arrangements for her son to stay with her father in Naples for spring break and intended to keep him there another two weeks while she completed training.

30. Plaintiff, on Sunday March 15, 2020, developed a sore throat.

31. Instructor Eggers was coughing very badly all day on March 17, which was noticed by all of the trainees and other personnel in the training class, all of whom speculated that Instructor Eggers had Covid-19.

32. By March 18, plaintiff and two classmates, Shane Osborne and Corey Williams all were sick and they, along with their instructor, continued to get worse.

33. Plaintiff went to training on Monday, March 20, 2020, but wore a mask when she and other trainees and personnel were in the back of the rescue vehicle.

34. Lt. Wohlitka, who was assisting with the training, asked plaintiff why she was wearing a mask and plaintiff responded she had a sore throat, but denied having any other symptoms.

35. Lt. Wohlitka sent plaintiff home, but instead plaintiff went to the City's employee clinic, where she was tested for flu A and B and strep throat. All tests were negative and plaintiff returned to class the same day after he was clear to return by Chief Broedell.

36. Lt. Wohlitka also was sick on March 20, 2020, his last day helping with the training class, but blamed it on allergies.

37. That same day, Instructor Eggers sent the entire class home early and on March 22, Division Chief of Training and Safety, Andrew Lezza, called the trainees and told them Instructor Eggers would be out Monday,

March 23, and was being tested for the flu. Following the call, plaintiff discussed with her classmates that they all should get tested for Covid.

38. Over that weekend, another classmate, Alex White, began feeling sick.

39. Chief Lezza, on Monday, March 23, notified the class there was no class that day and they would be out for the remainder of the week and Plaintiff took the opportunity to drive to Broward County and get a Covid test and urged her classmates to do likewise, but none ever did.

40. The same day, plaintiff informed Chief Lezza she had been tested and she would let him know the results as soon as they were available. She asked if the City was going to send the other trainees for testing and he said no, that they were going to use plaintiff's test results to determine what afflicted the other members of her training class.

41. Plaintiff asked if the City was going to send several other people who had assisted with the training for testing and Chief Lezza responded he didn't know they had been around the trainees.

42. Plaintiff learned she was positive for Covid-19 on March 26, 2020. She was told to quarantine for 14 days post test and that she must have clearance to return to work and to go to the hospital if she developed breathing difficulties.

43. Plaintiff notified Chief Lezza of what she had been told, although she still did not have a copy of a report of the test results. She asked again if

everyone would be tested now that she had tested positive, and he said the City would not because they knew from plaintiff's test results what it was not and if the others were tested, they must quarantine from their test date and it would prolong the trainees' return to class.

44. Plaintiff told her classmates of her test results, but still none voluntarily were tested.

45. Later that day, plaintiff posted on both her personal Face book page and on another Face book page, a support group for female firefighters—both with no identifiable information—that she had tested positive. Within minutes, Capt. Jeff Green, a representative of the Professional Firefighters / Paramedics of Palm Beach County, Local 2928, IAFF, Inc., called plaintiff and told her she shouldn't post things on social media she didn't want the department to know about.

46. Plaintiff told Capt. Green that she had told Chief Lezza as soon as she found out her test results. Capt. Green told plaintiff with Chief Fire Officer Keith Bryer on the line that Chief Lezza had told them that everyone was fine. Plaintiff pointed out that she was positive and everyone in her class, including Instructor Eggers was sick.

47. Lt. Wohlitka told plaintiff he was put on quarantine on March 27, 2020 after working a 48-hour shift with no one telling him why he was being quarantined. Plaintiff told him of her positive test results and Lt. Wohlitka was upset the City had not told him earlier that it had known before that he

and others may have been exposed to Covid and that is why training class was cancelled, but rather let him and others go home and expose their families and others in the community while working.

48. Plaintiff, on March 28, 2020, obtained a copy of her test results and texted them to Chief Lezza, providing irrefutable documentary evidence that she was infected.

49. Class resumed on April 6 with all only five trainees, including plaintiff, in attendance. One trainee remained home because his family was infected with COVID-19 and he had to remain home until their tests were negative. He returned on April 8.

50. Despite the City's refusal to test any of the other trainees or personnel helping with the training class, the City filed worker's compensation claims for the trainees, all of whom became sick during the time they were attending the class.

51. Meanwhile, in March 2020, patients started sharing experiences with COVID-19 on social media, drawing attention to possible COVID-related sequaelae.

52. Newspapers started publishing first-person accounts documenting how challenging recovery from COVID-19 could be.

53. Dr. Ken Scheppke, M.D., state EMS director and Chief Medical Officer for Palm Beach County Fire Rescue, and medical advisor to the City, had begun to suspect lingering effects of COVID in some patients, including

chronic fatigue syndrome and other conditions based on reported experience with the SARS-CoV-1 epidemic by early April 2019 and communicated his findings to various EMS departments, including that of the City, and posited that EMS workers had the potential to get what has come to be known as "long hauler COVID."

54.    Although in text messages and private conversations with classmates, others admitted lingering effects from their (undiagnosed) COVID-19, Ms. Bishof was the only trainee who not only had a positive CIVID-19 test, but also was the only trainee who admitted to her superiors she was still having health issues post COVID-19.

55.    On April 20, 2020, despite being told she had passed the training previously, despite no disciplinary problems and without ever having had an evaluation, Chief Lezza brought plaintiff into a room full of chiefs and terminated her employment.  The only reason ever given her was, "Failed to make probation."

## COUNT I
## DISABILITY DISCRIMINATION UNDER THE ADAAA

56.    Ms. Bishof realleges and incorporate the allegations of paragraphs 1-55 above.

57.    Ms. Bishof was examined by her own physician, Dr. Arthur Weiner, in late 2019 and pronounced medically stable and asymptomatic with no medical or physical restrictions to her occupational or daily activities.

58. Since contracting COVID-19 in March 2020, plaintiff has developed multiple diagnosed medical symptoms that substantially limit her in one or more major life functions including, but not limited to, breathing.

59. The City, already struggling under the additional demands put on its fire department because of the pandemic and because of the illness of its own employees, made no attempt to engage in the interactive process required by the ADAAA and summarily terminated plaintiff's employment.

60. The City fired Ms. Bishof because she tested positive for COVID-19 and told superior officials she was experiencing lingering symptoms, including but not limited to breathing difficulties, of which the City had knowledge, which occurred during a time when "long hauler COVID" was beginning to be recognized as a potentially long-term disabling condition that presented many challenges in its management.

61. The City did not terminate any of the other members of Ms. Bishof's training class, none of whom had had a positive COVID test and none of those who continued to experience COVID symptoms admitted to their superior officers.

62. The City's actions as more particularly alleged above, constituted disability discrimination in violation of 42 U.S.C. § 12112(a) and (b)(1).

63. As the direct, proximate and foreseeable result of the City's actions, Ms. Bishof has lost wages and benefits, as well as earning capacity, in the past and will suffer additional losses in the future and has suffered

mental anguish, loss of dignity, a diminution of her reputation and other intangible injuries for which she is entitled to compensatory damages.

64. Ms. Bishof is entitled to be awarded reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12133.

WHEREFORE, plaintiff, Karen Bishof, prays that this Court will:

a. issue a judgment that Ms. Bishof's termination by the City was a violation of her rights against disability discrimination under the ADAAA;

b. enjoin the City from continuing to violate the Ms. Bishof's federally protected rights and to make Ms. Bishof whole through back pay and reinstatement or, if that is not feasible as a make-whole remedy, an award of front pay;

c. grant Ms. Bishof judgment against City for back pay and compensatory damages:

d. grant Ms. Bishof her reasonable attorneys' fees and litigation expenses against City, and

e. provide any other relief that is appropriate.

## COUNT II
## PERCEIVED DISABILITY DISCRIMINATION UNDER THE ADAAA

65. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

66. WHEREFORE, plaintiff, Karen Bishof, prays that this Court will:

a. issue a judgment that Ms. Bishof's termination by the City was a violation of her rights against disability discrimination under the ADAAA;

b. enjoin the City from continuing to violate the Ms. Bishof's federally protected rights and to make Ms. Bishof whole through back pay and reinstatement or, if that is not feasible as a make-whole remedy, an award of front pay;

c. grant Ms. Bishof judgment against City for back pay and compensatory damages:

d. grant Ms. Bishof her reasonable attorneys' fees and litigation expenses against City, and

e. provide any other relief that is appropriate.

## COUNT III
## HANDICAP DISCRIMINATION UNDER THE FCRA

67. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

68. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

69. WHEREFORE, plaintiff, Karen Bishof, prays that this Court will:

a. issue a judgment that Ms. Bishof's termination by the City was a violation of her rights against disability discrimination under the ADAAA;

b. enjoin the City from continuing to violate the Ms. Bishof's federally protected rights and to make Ms. Bishof whole through back pay

and reinstatement or, if that is not feasible as a make-whole remedy, an award of front pay;

 c. grant Ms. Bishof judgment against City for back pay and compensatory damages:

 d. grant Ms. Bishof her reasonable attorneys' fees and litigation expenses against City, and

 e. provide any other relief that is appropriate.

## COUNT IV
## HANDICAP DISCRIMINATION UNDER THE FCRA

70. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

## COUNT V
## SEX DISCRIMINATION UNDER TITLE VI

Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

## COUNT VI
## SEX DISCRIMINATION UNDER THE FCRA

71. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

## COUNT VII
## SEX DISCRIMINATION UNDER THE FCRA

72. Ms. Bishof realleges and incorporate the allegations of paragraphs 1-64 above.

## Demand for Jury Trial

Ms. Bishof demands trial by jury on all issues so triable.

Respectfully submitted,

  /s/ *Karen Coolman Amlong*
KAREN COOLMAN AMLONG
Florida Bar No.:  275565
KAmlong@TheAmlongFirm.com
WILLIAM R. AMLONG
Florida Bar No.:  470228
WRAmlong@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

*Attorneys for the Plaintiff,*
   *Karyn Bishof*